IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JACQUELINE C. FJELLIN, for and as Trustee of the Leonard Van Liew Living Trust, and JAMES J. VAN LIEW, for and as Trustee of the Leonard Van Liew Living Trust,<br><br>    Plaintiffs,<br><br>v.<br><br>MARVIN PENNING, individually, MARY PENNING, individually, MYRON KAPLAN, individually, and MCGILL GOTSDINER WORKMAN & LEPP, P.C., L.L.O.,<br><br>    Defendants. | 8:14CV77<br><br>**MEMORANDUM AND ORDER** |

This is a diversity action brought by the trustees of the Leonard Van Lew Living Trust—which is alleged to be a perfected secured creditor—to recover for the wrongful termination of the Trust's financing statement and for the fraudulent misappropriation of the proceeds of the sale of its collateral. (Filing 1, Complaint ¶ 1.) Defendant and lawyer Myron Kaplan and his law firm, McGill, Gotsdiner, Workman & Lepp. P.C., L.L.O., move to dismiss Plaintiffs' cause of action against them pursuant to Fed. R. Civ. P. 12(b)(6). (Filing 10.)

### *Standard of Review*

To survive a motion to dismiss based on Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). This "plausibility standard" is not one of probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal citations and quotations omitted).

### *Factual Allegations*

In analyzing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I must "accept the allegations contained in the complaint as true and make all reasonable inferences in favor of the nonmoving party." *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014). The plaintiffs' factual allegations are as follows:

Plaintiffs Jacqueline Fjellin and James Van Liew are co-trustees of the Leonard Van Liew Living Trust, a revocable trust under South Dakota law. (Filing 1, Complaint ¶ 2.) Leonard Van Liew, Jacqueline's and James's father, was also a trustee, but he passed away after the events at issue. (Id. ¶ 3.)

From 2009 to 2011, the Trust made three loans to Four M Corporation, a Nebraska corporation formerly engaged in the business of operating three Dairy Queen stores in Nebraska. (Id. ¶ 14.) To secure Four M's repayment obligations, Four M granted the Trust a security interest in certain of its property, including the Dairy Queen stores. The Trust's security interest was perfected by the filing of a financing statement with the Nebraska Secretary of State that named the Trust as a secured creditor of Four M and listed the collateral in which the Trust held a security interest. (Id. ¶¶ 17-18 & Ex. C.)

Defendants Myron Kaplan and his law firm, McGill, Gotsdiner, Workman & Lepp, P.C., L.L.O., acted as corporate counsel for Four M Corporation prior to and through the events at issue. Kaplan prepared all the relevant notes, security

agreements, and financing statements, and he personally dealt with Leonard Van Liew (then in his 90s) to obtain his signature and the loaned funds. (Id. ¶ 15, 19.) Kaplan and his law firm did not represent the Trust.

Besides being a secured creditor, the Trust was also a Four M shareholder, and Leonard Van Liew was a Four M director. (Id. ¶14.) Co-defendant Marvin Penning was a shareholder, director, and secured creditor of Four M Corporation. (Id. ¶ 14.) It appears from the complaint that co-defendant Mary Penning was a secured creditor of the Trust. (Id. ¶ 21.)

In February 2012, Four M contracted with Frauenshuh Hospitality Group of KY/IN, LLC, for the sale of the assets of three of its Dairy Queen stores. The sale included the collateral in which the Trust had a perfected security interest. (Id. ¶ 20.) Defendant attorney Kaplan prepared and obtained from Leonard Van Liew his consent as a Four M director to the Frauenshuh transaction. (Id. ¶ 23.) However, none of the plaintiff trustees gave their prior express written consent to the sale, as was required by the security agreements executed by Four M in favor of the Trust. (Id. ¶ 25.) On April 11, 2012, the sale closed with a purchase price of $1,035,000 in exchange for instruments of transfer of the sold assets, including the Trust's collateral. (Id. ¶ 26.)

Five days later, on April 16, 2012, attorney Kaplan, on behalf of Four M, filed an amendment to the Trust's financing statement, "unbeknownst to any of the trustees." (Id. ¶ 28 & Ex. D.) The amendment indicated the "Termination" of the previously filed financing statement, stating that "Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement." (Ex. D.) The amendment listed the Van Liew Living Trust as the "NAME of SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT." (Id.)

Plaintiffs allege that instead of verifying that the Trust was paid the entire amount of the secured obligation as part of the closing of the Frauenshuh sale,

3

Penning and attorney Kaplan caused the proceeds to be kept from the Trust, and Penning misappropriated the funds to himself. (Filing 1 ¶¶ 27, 29.) While the Trust has received partial payment from Penning, the plaintiffs allege that the Trust is still owed $129,550.60 on the secured notes as of February 24, 2014, after which interest has accrued at the rate of $37.01 per day. (Id. ¶ 30.)

As to defendants Kaplan and his law firm, the plaintiffs "bring this action on behalf of the . . . Trust as a perfected secured creditor to recover for wrongful termination of the Trust's financing statement." The plaintiffs allege that Kaplan terminated the Trust's financing statement without authority and without the Trust's knowledge or prior approval; Kaplan owed a duty to the Trust to see that its secured debt was paid in full before terminating the financing statement; Kaplan's law firm is vicariously liable for Kaplan's wrongful acts and omissions; under Neb. Rev. Stat. U.C.C. § 9-509(d), Kaplan was allowed to terminate the Trust's financing statement only if "the secured party of record authorizes the filing," which it did not; and under Neb. Rev. Stat. U.C.C. § 9-625, Kaplan and his law firm are liable for the amount of loss caused by Kaplan's failure to comply with Neb. Rev. Stat. U.C.C. § 9-509. (Filing 1 ¶¶ 1, 32.) The plaintiffs assert that "because of Kaplan's termination, the Trust has been relegated to the status of one among many unsecured creditors clamoring to be paid with whatever remains in the wake of Penning's plundering." (Filing 17, Pls.' Br. Opp'n Defs.' Mot. Dismiss at CM/ECF p. 23.)

*Analysis*

Plaintiffs' complaint asserts one cause of action against defendants Kaplan and his law firm alleging that (1) Kaplan's failure to comply with Neb. Rev. Stat. U.C.C. § 9-509 triggered the remedies set out in Neb. Rev. Stat. U.C.C. § 9-625; and (2) Kaplan was negligent in failing to ensure secured debt was paid in full before terminating the financing statement. Kaplan and his law firm move to dismiss this cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). (Filing 10.)

In support of their motion to dismiss, Kaplan and his law firm argue that Neb. Rev. Stat. U.C.C. § 9-625 only applies to actions of a secured party, not corporate counsel for the debtor; Kaplan and his firm did not owe a duty of care to the Trust because it was not their client; and there is no causal relationship between the termination of the financing statement and Plaintiffs' alleged damages. (Filing 11, Br. Supp. Defs.' Mot. Dism. at CM/ECF p. 2.)

### 1. Neb. Rev. Stat. U.C.C. § 9-625

Neb. Rev. Stat. U.C.C. § 9-509(d)(1)—the statute Kaplan is accused of violating—provides that, with regard to an amendment of a financing statement (other than one that adds collateral or adds a debtor), a person may file an amendment only if the secured party of record authorizes the filing.[1] Section 9-510(a) in turn provides that a filing "is effective only to the extent that it was filed by a person that may file it under section 9-509."

Available remedies for violation of these sections are specified in Neb. Rev. Stat. U.C.C. § 9-625, which provides in relevant part:

> **9-625. Remedies for <u>secured party's</u> failure to comply with article**
>
> (a)   If it is established that a <u>secured party</u> is not proceeding in accordance with this article, a court may order or restrain collection,

---

[1] Neb. Rev. Stat. U.C.C. § 9-509(d)(2) does not appear applicable here because the complaint does not allege that Kaplan invoked this statute to compel the Trust to terminate the financing statement once the debt had been paid. Section 9-509(d)(2) allows a person to file an amendment to a financing statement if: (1) the debtor (Four M) makes an "authenticated demand" on a secured party (the Trust) to send the debtor a termination statement pursuant to Neb. Rev. Stat. U.C.C. § 9-513(a); (2) the secured party fails to file the termination statement; (3) the debtor authorizes the filing of a termination statement; and (4) the termination statement indicates that the debtor authorized the statement to be filed.

> enforcement, or disposition of collateral on appropriate terms and conditions.
>
> (b) Subject to subsections (c), (d), and (f), <u>a person</u> is liable for damages in the amount of any loss caused by a failure to comply with this article. Loss caused by a failure to comply may include loss resulting from the debtor's inability to obtain, or increased costs of, alternative financing.
>
> (c) Except as otherwise provided in section 9-628 [concerning limitation of liability of secured parties and secondary obligors]:
>
>> (1) <u>a person</u> that, at the time of the failure, was a debtor, was an obligor, or held a security interest in or other lien on the collateral may recover damages under subsection (b) for its loss; . . . .

(Emphasis added.)

Defendants Kaplan and his law firm argue that use of the words "secured party" in the title of Neb. Rev. Stat. U.C.C. § 9-625 and subsection (a) demonstrates that the statute only applies to a secured party's failure to comply with Article 9. Plaintiffs contend that use of the words "a person" in subsection (b) means that people other than secured parties—like Kaplan and his law firm—may be liable for violations of Article 9.

The parties have not provided, nor has the court located, relevant Nebraska cases applying the current version of section 9-625 or finding that section 9-625 creates a cause of action against a third party who files an unauthorized termination statement. However, Defendants correctly point out that the Uniform Commercial Code comments to section 9-625 confirm the statute's limited applicability to secured parties:

> Subsections <u>(a) and (b)</u> provide the basic remedies afforded to those aggrieved by a <u>secured party's</u> failure to comply with this article. . . .

6

> Subsection (c) identifies who may recover under subsection (b). It affords a remedy to any aggrieved person who is a debtor or obligor. . . . Subsection (c) also affords a remedy to an aggrieved person who holds a competing security interest or other lien . . . .

Neb. Rev. Stat. U.C.C. § 9-625 cmts. 2 & 3 (Westlaw 2014) (emphasis added). While official comments to the Uniform Commercial Code, as adopted by Nebraska, are "not binding, they are persuasive in matters of interpretation." *Blue Valley Co-op v. Nat'l Farmers Org.*, 600 N.W.2d 786, 792 (1999).

Another comment to section 9-625 explains that subsections (a) and (b) set forth two different types of available remedies—(a) allows equitable relief, and (b) permits recovery of monetary damages. *See* Neb. Rev. Stat. U.C.C. § 9-625 cmt. 2 ("under subsection (a) an aggrieved person may seek <u>injunctive relief</u>, and under subsection (b) the person may recover <u>damages</u> for losses caused by noncompliance") (emphasis added)). This comment does <u>not</u> suggest that section 9-625(a) applies to a secured party's wrongdoing, whereas section 9-625(b) embraces wrongdoing by <u>any</u> person—secured party or not.

Further, secondary sources suggest that section 9-625 applies only to secured parties who violate Article 9. *See, e.g.*, 11 Anderson U.C.C. § 9-625:3 [Rev] (3d ed.) (Westlaw 2014) ("UCC § 9-625 covers the remedies available for a <u>secured party's</u> failure to comply with its duties under Revised Article 9. UCC § 9-625 must be read in conjunction with UCC § 9-628 which provides exemptions from, and limitations on, a <u>secured party's</u> liability." (emphasis added)); 9 Hawkland UCC Series § 9-507:1 (Westlaw 2014) ("Subsection 9-507(1) [the prior version of § 9-625] sets out the remedies for the debtor and certain other secured creditors when the <u>secured party</u> fails to comply with the default provisions of the Code. If the <u>secured party</u> has not yet acted in noncompliance but is about to do so, or if the <u>secured party</u> is presently acting in noncompliance, this section provides for injunctive relief. If the <u>secured party</u> has already acted in noncompliance, this section provides for damages . . . ."

(emphasis added and footnotes omitted)); 43 No. 1 UCC L. J. ART 4 (Oct. 2010) (Westlaw 2014) ("Section 9-625 provides that a secured party is generally liable to the debtor, other obligors, and other security interest holders for losses incurred as a result of secured party's failure to comply with Article 9." (emphasis added)).

Finally, as Defendants point out, the title of Neb. Rev. Stat. U.C.C. § 9-625 only mentions secured parties as the wrongdoers against which remedies may be available: "9-625. Remedies for secured party's failure to comply with article." (Emphasis added.) While it is true that "[t]itle heads, chapter heads, section and subsection heads or titles, and explanatory notes and cross references, in the statutes of Nebraska, supplied in compilation, do not constitute any part of the law," Neb. Rev. Stat. § 49-802(8) (Westlaw 2014), it is also true that statutory titles, headings, and captions "can be a useful aid in resolving a statutory text's ambiguity." *United States v. Quality Stores, Inc.*, 134 S. Ct. 1395, 1402 (2014); *see also Argus Leader Media v. United States Dep't of Agriculture*, 740 F.3d 1172, 1176 (8th Cir. 2014) (court's plain reading of statute was "confirmed by the subsection heading"; noting that while statute's heading "cannot substitute for the operative text of the statute[,] . . . statutory titles and section headings are tools available for the resolution of a doubt about the meaning of a statute." (internal quotations and citations omitted)); *State v. Rubek*, 653 N.W.2d 861, 866 (Neb. App. 2002) ("the title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of a statute" (internal quotations and citations omitted)).

Considering the language of section 9-625 and its comments, secondary sources, and the lack of helpful case law, I conclude that subsections (a) and (b) of section 9-625 both refer to a secured party's failure to comply with Article 9, but subsection (a) addresses the availability of equitable relief, while subsection (b) addresses money damages. In other words, the distinction between subsection (a) and (b) is not the identity of the wrongdoer (secured party vs. third party), but the nature of the available remedy (equitable vs. monetary damages). Because Kaplan and his

law firm are not secured parties, Neb. Rev. Stat. U.C.C. § 9-625 does not provide a remedy for their alleged violation of Article 9.

Therefore, insofar as Plaintiffs assert a claim against defendants Kaplan and his law firm based on Neb. Rev. Stat. U.C.C. § 9-625, the defendants' Rule 12(b)(6) motion shall be granted.

*2. Negligence*

Besides basing their claim against Kaplan and his law firm on sections 9-509(d) and 9-625 of Nebraska's Uniform Commercial Code, the plaintiffs also appear to assert common-law negligence. Plaintiffs allege that "Kaplan owed a duty to the Trust to see that its secured debt was paid in full before terminating the financing statement" and "[t]he McGill Firm is vicariously liable for Kaplan's wrongful acts and omissions." (Filing 1 ¶¶ 33, 34.)

> To prevail on a tort claim, a plaintiff must show that the defendant's tortious actions caused the plaintiff's losses. W. Page Keeton *et al.*, Prosser and Keeton on Torts § 41 (5th ed. 1984). When ruling on a motion to dismiss, we look to whether the plaintiffs' allegations suffice to show the required causal connection between the defendant's wrongful conduct and the plaintiffs' losses. *Dura [Pharmaceuticals, Inc. v. Broudo]*, 544 U.S. [336] at 347, 125 S. Ct. 1627 [2005].

*Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008).

Here, the plaintiffs have failed to plead "factual content that allows the court to draw the reasonable inference" that defendants Kaplan and his law firm are liable on a common-law negligence theory for filing the termination of the financing statement without the Trust's knowledge or approval. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, the plaintiffs have failed to plead causation or damage.

The purpose of a financing statement is "merely to give notice to subsequent purchasers or creditors of a possible security interest." *Iowa State Bank v. Trail*, 449 N.W.2d 520, 522 (Neb. 1989); *Genoa Nat'l Bank v. Sorensen*, 304 N.W.2d 659, 662 (Neb. 1981) (stating the purpose of filing a financing statement "is to give constructive notice [of the security interest] to the world and actual notice to those who would take the trouble to look"); *Allstate Financial Corp. v. U.S.*, 109 F.3d 1331 (8th Cir. 1997). The presence or absence of a financing statement does not affect the validity of Plaintiffs' security interest, only its priority. As the Nebraska Supreme Court explained in *Iowa State Bank*:

> Assuming lapse of the financing statements and subsequent "imperfection" of the bank's security interest, it does not follow that the security interest itself lapsed. The purpose of filing the financing statements was merely to give notice to subsequent purchasers or creditors of a possible security interest. As between the parties, the security agreement and the interests created thereby remain effective, even though they may be subject to the rights of other creditors.

*Iowa State Bank*, 449 N.W.2d at 522 (internal citations omitted).

Thus, Kaplan's termination of the financing statement did not invalidate the Trust's security interest in the collateral, even after the collateral's sale. At the time of the sale (April 11, 2012), there existed security agreements between the Trust and Four M (as well as a financing statement) that gave the Trust a security interest in "all of the Property" described in the agreement "and all proceeds . . . of the Property." The "property" included all of Four M's accounts and other rights to payment, inventory, equipment, instruments and chattel paper, and general intangibles. "Proceeds" included "anything acquired upon the sale . . . of the Property." (Filing 1-2; Filing 1-3 (emphasis added).) At closing, the Trust could have exercised its rights to the proceeds of the sale of the collateral pursuant to the terms of the security agreements. Further, Kaplan's termination of the financing statement would not have prevented the Trust from foreclosing upon the collateral.

10

As a result, there is simply no causation between the termination of the Trust's financing statement and Plaintiffs' alleged damages. Plaintiffs do not, and cannot, allege that they lost their security interest in the proceeds of the collateral sale because Kaplan filed a termination of the financing statement. As the above case law demonstrates, the security interest remained intact. At bottom, Plaintiffs claim that co-defendant Marvin Penning failed to pay Four M's debt to the Trust out of the sale proceeds. This has no causal relationship to the termination of the filing statement. As such, Plaintiffs' negligence claim against defendants Kaplan and his law firm must fail.

### *3. Plaintiffs' Request to File Amended Complaint*

Because I have found that the plaintiffs have failed to state a claim upon which relief can be granted based on the Nebraska Uniform Commercial Code and common-law negligence, Plaintiffs have requested leave to file an amended complaint to assert other claims against Kaplan and his law firm. (Filing 17 at CM/ECF pp. 24-27 (seeking leave to amend to assert claims of aiding and abetting Penning's conversion, negligent and intentional misrepresentation, detrimental reliance, and civil conspiracy).)

In light of the factual allegation that "Kaplan . . . caused the [sale] proceeds to be kept from the Trust" (Filing 1, Complaint ¶ 27), which I must accept as true at this stage, I shall grant the plaintiffs leave to file a motion to amend the complaint to assert claims related to that allegation. Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). Counsel should note that any motion for leave to amend must be made in compliance with NECivR 15.1.

Accordingly,

IT IS ORDERED:

1.  The Rule 12(b)(6) motion (Filing 10) filed by defendants Myron Kaplan and McGill, Gotsdiner, Workman & Lepp. P.C., L.L.O., is granted, and Plaintiffs' cause of action against such defendants based on Neb. Rev. Stat. U.C.C. § 9-625 and negligence are dismissed;

2.  Plaintiffs are granted leave to file a motion to amend the complaint to assert claims against defendants Myron Kaplan and McGill, Gotsdiner, Workman & Lepp. P.C., L.L.O., related to the allegation that defendant Kaplan caused sale proceeds to be kept from the Trust; and

3.  Any motion for leave to file an amended complaint shall be filed in strict compliance with NECivR 15.1 on or before September 19, 2014, in the absence of which defendants Myron Kaplan and McGill, Gotsdiner, Workman & Lepp. P.C., L.L.O., shall be dismissed from this matter without further notice.

DATED this 2nd day of September, 2014.

BY THE COURT:
*Richard G. Kopf*
Senior United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.